

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ARMAND PANLASIGUI ABAYA,<br>Plaintiff, | ) | Case No. |
| | ) | |
| | ) | Agency File No. A 89 400 900 |
| v. | ) | |
| | ) | |
| MICHAEL CHERTOFF, SECRETARY,<br>DEPT. OF HOMELAND SECURITY;<br>MICHAEL MUKASEY, ATTORNEY<br>GENERAL OF THE UNITED STATES;<br>RUTH A. DOROCHOFF, CHICAGO,<br>ILLINOIS DISTRICT DIRECTOR,<br>U.S. CITIZENSHIP AND<br>IMMIGRATION SERVICES;<br>DEPARTMENT OF HOMELAND<br>SECURITY, AND U.S. CITIZEN-<br>SHIP AND IMMIGRATION SERVICES,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **08CV1337**<br>**JUDGE KENNELLY**<br>**MAG.JUDGE COX** |



FILED

MAR 0 5 2008     MAR - 5 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**COMPLAINT FOR RELIEF**

1. This is an action for declaratory, injunctive and other appropriate relief to review and correct unlawful administrative agency action. The action arises under the Immigration and Nationality Act ("INA"), 8 U.S.C §§1101 et seq. and the Administrative Procedure Act ("APA"), 5 U.S.C. §§701 et seq., seeking judicial review of the denial of Plaintiff's Motion to Reopen and Reconsider the denial of Plaintiff's Application for Adjustment of Status filed under the protection of the Child Status Protection Act ("CSPA").

## Introduction

Mr. Armand Abaya ("Mr. Abaya"), complains of Defendants' arbitrary, capricious and unlawful actions. Because he is

the beneficiary of a relative petition filed by his mother on his behalf as a child and, through no fault of his own would have, due solely to the passage of time, have "aged out" without the protection of the CSPA, Mr. Abaya is suffering a legal wrong because of the actions of USCIS. He is entitled to judicial review and reversal of the Defendants' actions. Plaintiff challenges the Defendants' decision denying his motion to reopen and denying his application for adjustment of status on non-discretionary grounds. Specifically, Defendants erred in denying Mr. Abaya's Motion to Reopen and Reconsider the denial of his application for adjustment of status. Mr. Abaya is the beneficiary of an approved visa petition and is statutorily eligible for adjustment of status due to protection under the CSPA.

## Jurisdiction

2.    This complaint seeks an order to compel Defendants' to review and reverse their denial of the Motion to Reopen and Reconsider for failure to perform their duty under the provisions of 8 U.S.C. §1255 and for erring to find the Plaintiff statutorily eligible for adjustment of status. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and 5 U.S.C. §702 et seq. and relief is requested pursuant to said statutes.

## Venue

3.    Venue is determined according to 28 U.S.C. §1391(e) and is proper in the Northern District of Illinois where Plaintiff resides, where Defendant Ruth A. Dorochoff ("Ms. Dorochoff") and the Chicago, Illinois District

Office of USCIS reside and where Defendants' unlawful actions have occurred.

## Parties

4.  Plaintiff, Mr. Abaya, is lawfully present in the United States and is the beneficiary of an approved second preference visa petition, filed by his legal permanent resident mother, thereby allowing him to adjust his immigration status to that of a lawful permanent resident of the United States. He resides in Wheeling, Illinois within the jurisdiction of this court. Mr. Abaya is the beneficiary of the petition and the applicant of the application for adjustment of status denied by the Chicago District Office of USCIS, which is within the jurisdiction of this court.

5.  Defendant, Michael Chertoff, ("Mr. Chertoff"), is the Secretary of the Department of Homeland Security of the United States and is sued herein in his official capacity.  Defendant Mr. Chertoff if responsible for the administration of the Immigration and Nationality Act as it relates to USCIS. His rulings on matters of law are binding on USCIS.

6.  Defendant, Michael Mukasey, ("Mr. Mukasey"), is the Attorney General of the United States and is sued herein in his official capacity.  Mr. Mukasey, in this capacity, has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. §1103 as it related to the Immigration and Naturalization Service ("INS"), now know as USCIS.

7.  Defendant, Ms. Dorochoff is the Chicago, Illinois District Director of USCIS. She is under the jurisdiction of Defendant Mr. Chertoff and is sued herein in her official capacity. Ms. Dorochoff's office is located at 101 W. Congress Parkway, Chicago, Illinois. The Chicago, Illinois District Office is responsible for adjudication of applications for permanent residency status under 8 U.S.C. §1255 and matters ancillary thereto. Ms. Dorochoff is responsible for all actions taken by USCIS Chicago, Illinois District Office.

8.  Defendants, DHS and USCIS are made party Defendants for purposes of obtaining full relief under the APA.

9.  Plaintiff alleges, on information and belief, that all Defendants have a role in the illegal abuse of discretion and misapplication and error in finding Mr. Abaya ineligible for adjustment of status under 8 U.S.C. §1255 that have prejudiced the Plaintiff as stated herein.

## Statement of Claim

10. Mr. Abaya filed a Motion to Reopen and Reconsider the Denial of his Application to Register Permanent Residence or Adjust Status with USCIS on October 5, 2007. Said motion was postmarked as denied on February 4, 2008 and stated that Mr. Abaya no longer qualified for adjustment of status as a child and a visa number was not immediately available to him. An application for adjustment of status (Form I-485) had been previously filed by Mr. Abaya on February 28, 2007 and was denied on September 5, 2007 because, according to USCIS, he failed to statutorily qualify under the provisions of the CSPA.

11. Mr. Abaya's lawful permanent resident mother filed a Form I-130, Relative Petition, (Priority date April 20, 1999) on his behalf as her child under the family-based second preference category (FB2A) as an unmarried child under 21 years of age. The I-130 petition was finally approved on August 3, 2004, having been pending for approximately *5 years and 136 days*. Although Mr. Abaya turned 21 years old on July 9, 2000, pursuant to Section 3 of the CSPA, Mr. Abaya is statutorily eligible for issuance of an immigrant visa and the Defendants erred in finding him statutorily ineligible for adjustment of status for allegedly failing to qualify for the CSPA.

12. Mr. Abaya had been contacted by the National Visa Center ("NVC") on April 25, 2005 regarding processing of his immigrant visa. On September 26, 2005, the Immigrant Fee Bill was submitted to NVC on his behalf. On October 10, 2005, the NVC sent correspondence indicating that the timing was appropriate for him to file his DS 230, Part I (Application for Immigrant Visa and Alien Registration). The DS 230, Part I was submitted on November 28, 2005. An initial visa interview was scheduled for May 2, 2006. On May 10, 2006, (after emergency surgery), Mr. Abaya attended his visa interview at the U.S. Embassy in Manila, Philippines. A hasty and erroneous decision was made by the Consular Officer proclaiming that, because Mr. Abaya was over 21, he did not qualify for a visa number in the FB2A category and that his visa category was FB2B (unmarried children of legal permanent residents over the age of 21). The consular officer denied the visa application.

13.  A Request for Reconsideration was filed with the Chief of
     the Immigrant Visa Section in Manila on May 27, 2006,
     reiterating   and   carefully   explaining   in   detail
     eligibility and coverage of Mr. Abaya under the CSPA. A
     Supplement   to   the   Request   for   Reconsideration   was
     submitted to the Chief of the Immigrant Visa section on
     October 17, 2006, specifically addressing the "sought to
     acquire" statutory language of the CSPA which states that
     in order to "lock in" the age of a beneficiary under the
     age of 21, the adjustment application must be filed
     within one year of the visa number first becoming
     available.

14.  Meanwhile, a student visa was validly issued to Mr. Abaya
     on December 22, 2004 to expire January 3, 2008 by the
     U.S.   Embassy   in   Manila,   Philippines   under   INA
     §101(a)(15)(F), authorizing his enrollment and attendance
     as a full-time student at DePaul University to pursue a
     Masters of Information Systems degree.   Mr. Abaya fully
     disclosed he was the beneficiary of a visa petition at
     the time he applied for the student visa.   He was
     admitted to the United States as a student on January 1,
     2005.   Mr. Abaya most recently entered the United States
     as a valid F-1 student on June 5, 2006, after the
     consular denial of his immigrant visa petition.

15.  Mr. Abaya filed an application for adjustment of status
     in the United States on February 28, 2007 (MSC0715320951)
     in accordance with 8 U.S.C. §1255 based upon his approved
     visa petition.   In accordance with applicable practice,
     this application was filed with the Chicago District

Office of USCIS. Following his interview on June 18, 2007, Mr. Abaya was advised by the Adjudication Officer that his case was approvable and a visa would be requested via facsimile, since the officer was not then able to contemporaneously request a visa on-line due to technical difficulties.

16.   After several inquiries to USCIS, on August 29, 2007, another officer temporarily assigned to the Adjustment of Status unit, requested that counsel address the "sought to acquire" statutory language under the CSPA and provide evidence that Mr. Abaya is eligible for protection under the CSPA. On that same date, documentation was submitted (including copies of BIA case law) to the Officer providing evidence that Mr. Abaya is statutorily eligible for coverage under the CSPA and further explaining that he clearly "sought to acquire" a visa within one year after a visa becoming available; and therefore, that he is statutorily eligible to acquire permanent resident status.

17.   The CSPA allows a beneficiary like Mr. Abaya to "lock in" his age if he has "sought to acquire" the status of a lawful permanent resident within one year of the date that the visa became available. §3 of CSPA, PL 107-208, 116 Stat. 927 (Aug. 6, 2002), 2002 H.R. 1209. This provision mitigated the harshness of previous provisions by providing for the protection of children who are beneficiaries under the preference categories. In an unpublished decision, Board of Immigration Appeals ("BIA") has concluded that "sought to acquire" under the CSPA does not require filing for permanent residency, and

BIA rightfully determined that the *plain language of the statute* obviously indicates that Congress intended those words to be broader than "filed". Recognizing that Congress intended the CSPA to be interpreted broadly. The BIA held that "sought to acquire" includes acts that "make an attempt to get or obtain" or "try to acquire or gain," which includes "hiring counsel" (see copy of *Matter of Kim*, No. A-77-828-503 (BIA 2004) enclosed as Exhibit A).

18. Under the CSPA one-year requirement, Mr. Abaya would have to have "sought to acquire" a visa by August 2, 2005. He did so. He originally sought to consular process after the NVC advised him on April 25, 2005 that a visa number was available to allow him do so. Mr. Abaya was diligent in seeking to acquire his visa. Fee bills and all supporting documents were sent to the NVC to continue processing his immigrant visa application. Correspondence from the NVC dated May 22, 2005 acknowledges, "We have received your payment for the Affidavit of Support Fee Bill." He also received NVC correspondence dated June 4, 2005 indicating receipt by the NVC of the Agent of Choice letter. Irrespective of any reliance on *Matter of Kim*, Mr. Abaya undoubtedly "sought to acquire" a visa by these actions.

19. On September 5, 2007, USCIS surprisingly reversed the original Adjudications officer and denied Mr. Abaya's application for adjustment of status under the rational that he did not qualify under the CSPA, that there was no visa immediately available and furthered determined that he was inadmissible  for fraud/willful misrepresentation.

Because Mr. Abaya clearly "sought to acquire" an immigrant visa prior to August 2, 2005, according to the BIA, he is protected under the CSPA from "aging out". The Field Officer's decision was thus clearly erroneous and merited reconsideration.   A copy of the decision is attached as Exhibit B.

20. A Motion to Reopen and Reconsider was filed with the Chicago District Office on October 5, 2007 arguing that the temporary Field Officer erred in denying Mr. Abaya's application for adjustment of status on the basis that he had not "sought to acquire" the status of an alien lawfully admitted for residency within one year of visa availability and was therefore not eligible for protection under the CSPA. In addition, the temporary Field Officer erred in unilaterally for the first time suggesting, without having interviewed Plaintiff or properly considering the factual record, that Mr. Abaya was inadmissible under INA §§212(a)(6)(C)(i) for fraud/willful misrepresentation of a material fact and 212(a)(7)(A) for not being in possession of a proper visa.

21. Undersigned counsel timely filed a Motion to Reopen and Reconsider, which USCIS denied on or about February 4, 2008, stating that Mr. Abaya did not qualify for the CSPA provisions because he did not file for adjustment within one year of his visa number first becoming available and that the actions he took "to acquire his visa" were not sufficient to warrant a late filing of the application. (Notably, USCIS ignored the temporary Field Officer's unilateral determination of misrepresentation.)   USCIS

thus failed to reopen the adjustment of status application, because Mr. Abaya purportedly no longer qualified as a child, contrary to the plain language of the CSPA. A copy of the decision is attached as Exhibit C. This decision constitutes a final agency action, there are no further administrative appeals, and all administrative remedies have been exhausted.

22. Plaintiff makes a claim pursuant to the Administrative Procedure Act, 5 U.S.C. §§701 et seq.

23. The APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of relevant statute, is entitled to judicial review thereof." 5 U.S.C. §702. "To the extent necessary to the decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. §706.

24. The reviewing court shall hold unlawful agency action that, *inter alia*, is "not in accordance with law." 5 U.S.C. §706(2)(A). *Nair v. Coultice,* 147 F.3d 1129, 1210 (S.D. Cal. 2001).

25. According to the plain language of the Child Status Protection Act, Mr. Abaya is statutorily eligible to have his status adjusted under the law. 8 U.S.C. §1255.

26. The denial of reopening of the application for adjustment of status was arbitrary, capricious, and contrary to law because Mr. Abaya established statutory eligibility for adjustment of status and protection under the Child Status Protection Act as a matter of law.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Armand Abaya, demands judgment against the Defendants as follows:

(a) Declaring that the actions of the Defendants in denying the motion to reopen and reconsider and the application for adjustment of status were unlawful by finding Plaintiff ineligible for adjustment of status in contradiction of the plain language of the Child Status Protection Act, resulting in an improper application of the law.

(b) Ordering the denial of the application for adjustment of status be reconsidered and reversed forthwith.

(c) Granting Plaintiff costs and attorneys fees, and such other and further relief as this court may deem proper.

Dated:    March 5, 2008

CHRISTINE M. CONTRERAS
CALMEC Global Law Group
1880 W. Winchester Road, Suite 206
Libertyville, IL 60048
ccontreras@calmec-law.com
Phone(847)996-088/Fax 847-996-0899
Attorney for Plaintiff, Armand Abaya

## Exhibit A

*Matter of Kim*, No. A-77-828-503 (BIA 2004)

A

U.S. Department of Justice
Executive Office for Immigration Review   Case 1:08-cv-01337   Document 1   Filed 03/05/2008   Page 14 of 27

Falls Church, Virginia  22041

File: A77 828 503 - Cleveland                              Date:

In re: JI YOUNG KIM                                       DEC 2 0 2004

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Kenneth J. Robinson, Esquire

ON BEHALF OF DHS:          G. Michael Wick
                           Assistant District Counsel

CHARGE:

   Notice:  Sec.   237(a)(1)(B), I&N Act [8 U.S.C. § 1227(a)(1)(B)] -
                Nonimmigrant - remained longer than permitted

         Sec.   237(a)(2)(A)(ii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(ii)] -
                Convicted of two or more crimes involving moral turpitude

APPLICATION:  Adjustment of status; voluntary departure

    In a decision dated December 4, 2002, an Immigration Judge found the respondent removable only as charged under section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B), found her statutorily ineligible for adjustment of status and voluntary departure, and ordered her removed from the United States to the Republic of Korea. The respondent appeals from that decision. The record will be remanded for further proceedings.

    The respondent contests the Immigration Judge's denial of the application for adjustment of status on the basis that she did not qualify as a derivative beneficiary of her father's employment-based visa petition, inasmuch as she had "aged out," by being over 21 years old at the time the adjustment of status application was considered, and that she failed to show that she "sought to acquire" lawful permanent resident status within a year after her eligibility. The respondent contends that the Immigration Judge erred in finding that under section 3 of the Child Status Protection Act, Pub. L. No. 107-20, 116 Stat. 927 (2002) ("CSPA"), now codified at section 203(h)(1)(A) of the Act, 8 U.S.C. § 1153(h)(1)(A), she did not retain her "child" status at the time her application for adjustment of status was finally adjudicated. Further, she argues that the Department of Homeland Security ("DHS," formerly the Immigration and Naturalization Service) and the Immigration Court failed to expedite the hearing in her case. As a result, she reached the age of 21 during the pendency of these proceedings and prior to the time her application for adjustment of status was finally considered by the Immigration Judge. In the alternative, the respondent contends that she is

presently eligible to seek adjustment of status under former section 245(i) of the Act, 8 U.S.C. § 1255(i), based on the conversion of her employment-based visa petition to a family preference petition as the unmarried daughter of a lawful permanent resident and the retention of her priority date pursuant to section 204(a)(1)(D)(i)(III) of the Act, 8 U.S.C. § 1154(a)(1)(D)(i)(III).

Section 3 of the CSPA addresses the treatment of unmarried sons and daughters seeking status as family-sponsored, employment-based, and diversity immigrants. Section 3 amended section 203 of the Act with respect to an alien child who is a derivative beneficiary of an employment-based visa petition. It offers a formula to determine whether the derivative is a "child" as defined in the Act. Specifically, a determination whether an alien satisfies the age requirement of Section 101(b)(1) shall be made using the age of the alien on the date on which an immigrant visa number became available for the alien's parent, but only if the alien has "sought to acquire" the status of an alien lawfully admitted for permanent residence within one year of such availability, reduced by the number of days in the period during which the applicable petition was pending. *See* CSPA §3.

There is no dispute that the respondent's father's employment-based visa petition (Form I-140) has a priority date of August 28, 1989, and was approved on May 11, 1998 (Exh. 4). At that time, the respondent, who was born on May 2, 1980, was 18 years of age and eligible for derivative benefits on her father's visa petition as his "child." The respondent's application for adjustment of status based on the approved visa petition was filed with DHS on October 12, 1999, over 17 months later (Exhs. 2, 4). The respondent was still eligible for derivative benefits as she was only 19 years of age. On February 3, 2000, the respondent, her parents, and her sibling were placed in removal proceedings. At the time their applications for adjustment of status were finally adjudicated by the Immigration Judge on July 16, 2002, the respondent was over age 21. The Immigration Judge granted adjustment of status to her family members (Tr. at 77, 78). However, he denied such relief to the respondent.

In denying adjustment of status the Immigration Judge found that the respondent was over age 21 at the time the application for adjustment of status was finally considered and that under section 3 of the CSPA she failed to show that she "sought to acquire" lawful permanent resident status within a year of her eligibility for such status. The Immigration Judge interpreted the phrase "sought to acquire" to mean the "filing" of the Application to Register Permanent Residence or Adjust Status (Form I-485) (I.J. at 6-7). The Immigration Judge considered the respondent's argument that her parents had retained counsel and were preparing their applications for permanent residence status within the one-year after the visa petition had been approved. However, he concluded that Congress did not include such "elasticity" in its drafting of the statute, and could have included the language of "filing" for lawful permanent residence within a "reasonable period," but did not do so (I.J. at 7). The Immigration Judge determined that as the respondent failed to file the application for adjustment of status within a year of her eligibility, she was not protected in retaining her status as a "child."

We find that the Immigration Judge's interpretation of the statute, although reasonable, should not apply in the instant case. This Board has held that in interpreting a statute we look first to the precise language of the statute. *Matter of Nolasco*, 22 I&N Dec 632, 635-36 (BIA 1999). "The paramount index of

2

congressional intent is the plain meaning of the words used in the statute taken as a whole." *Id.* citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); *Matter of Michel*, 21 I&N Dec. 1101 (BIA 1998). Where the language is clear, we must give effect to the unambiguously expressed intent of Congress. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). Congress chose to use "sought to acquire," rather than "filed" in section 203(h)(1)(A) of the Act. The plain meaning of seek or "sought" includes "to try to acquire or gain" or "to make an attempt." *Merriam-Webster's Collegiate Dictionary* 1124 (11[th] ed. 2003). The term "acquire" is defined as "to gain possession or control of; to get or obtain." *Black's Law Dictionary* 25 (8[th] ed. 2004). In other words, the alien must "make an attempt to get or obtain" status as a lawful permanent resident within one-year of such availability. By contrast, the plain meaning of "file" is "to deliver a legal document to the court clerk or the record custodian for placement into the official record." *Black's Law Dictionary* 660 (8[th] ed. 2004). *See, e.g.,*8 C.F.R. § 204.1(b)-(d) (2004) (the DHS requirements for filing a visa petition).

In ascertaining the plain meaning of a statutory provision, we construe the language in harmony with the wording and design of the statute as a whole. *Matter of Nolasco, supra,* at 636. Congress has used the term "filed" in various sections of the Act, but no where else have we found the phrase "sought to acquire." *See, e.g.,* sections 208(a)(2)(B) and 245(a) of the Act. Congress explicitly employed the term "filed" or "filing" within each section of the CSPA. However, Congress omitted the term with respect to section 203(h)(1)(A) of the Act. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *INS v. Cardoza-Fonseca, supra,* at 432 (quotations omitted). Congress intentionally and purposely used the language "sought to acquire," rather than "filed." When Congress has desired the filing of a petition or application, it has expressly required such action. *See* Section 208(a)(2)(B) of the Act (application for asylum must be "filed within 1 year" of arrival in this country).

We observe that there have been no precedential decision or regulatory provisions addressing this issue. The DHS, in its internal memorandum, has interpreted "sought to acquire" to mean the filing of the I-485 or application for lawful permanent residence or to adjust status. *See* INS Memorandum for Regional Directors- CSPA-Memorandum Number 2 (HQADN 70/6.11) at 4 n.4 (Feb. 14, 2003) located at http: //uscis.gov/graphics/lawsregs/handbook/CSPA2-pub.pdf. Similarly, the Department of State ("DOS"), in its cables to consular offices and embassies, has concluded that the language sought to acquire "generally" means the "filing" of the required application within a year of obtaining eligibility. *See* DOS Second Cable on the CSPA 015049 at paras. 15-25 (Jan. 17, 2003), located at: http://travel.state.gov/visa/state015049.html). This Board, however, is not bound by the interpretation of the DHS or the DOS as to the statutes which we administer. *See Matter of M/V Seru*, 20 I&N Dec. 592. 595 (BIA 1992). From a practical administrative and adjudicative standpoint, we recognize that the interpretation of "sought to acquire" as "filed" provides a date certain upon which to determine whether the alien qualifies for protection as a "child" under section 203(h)(1)(A). However, Congress could have easily used the term "filed" to accomplish this objective, but chose not to. We find support for a broad interpretation of this language in the legislative history of the CSPA.

3

The clear congressional intent in enacting the CSPA was to "bring families together." 148 Cong. Rec. H4989-01, H49991, July 22, 2002, statement by Rep. Sensenbrenner. Congress desired to "provide relief to children who lose out when [the administrative agency] takes too long to process their adjustment of status applications." *Id.* at H4992, statement by Rep. Gekas. The overriding concern was that alien children "through no fault of their own, lose the opportunity to obtain immediate relative status." H.R. Rep. 107-45, H.R. Rep. No. 45, 107th Cong., 1st Sess. 2001, reprinted in 2002 U.S.C.C.A.N. 640, 641 (Apr. 20, 2001) 2001 WL 406244 (Leg. His.). Indeed, the United States Court of Appeals for the Ninth Circuit has held that the CSPA should "be construed so as to provide expansive relief to children of United State citizens and permanent residents." *Padash v. INS*, 358 F.3d 1161, 1172 (9th Cir. 2004) (interpreting "pending final determination" under CSPA § 8 to include those applications for lawful permanent residence which were on petition for review to the federal court of appeals).

For the foregoing reasons, we conclude that <u>Congress intended the term "sought to acquire" lawful</u> permanent residence at section 203(h)(1)(A) to be <u>broadly interpreted</u> within the context of the statute, and not limited to the filing of the application. Under the facts of this case, where the record demonstrates that the alien's parents had <u>hired counsel</u> to prepare the application for adjustment of status within a year of the approval of the employment based visa petition, the application for adjustment of status to lawful permanent residence was actually filed within a reasonable period thereafter, and the alien child was still under the age of 21 at the time the application for adjustment of status was filed, <u>we find that the respondent 'sought to acquire" lawful permanent residence within a year of her eligibility for such status.</u> To conclude otherwise would undermine the very purpose and intent of the statute, which was to protect an alien "child" from "aging out" due to "no fault of her own."

We therefore find that the respondent retained her "child" status under the CSPA for purposes of adjudicating her application for adjustment of status based on her father's employment-based visa petition. Thus, there is no reason to address her alleged eligibility to adjust her status as the unmarried daughter of a lawful permanent resident. We observe that the Immigration Judge remarked that had he found the respondent statutorily eligible for adjustment of status, that he would have granted such relief in the exercise of discretion (I.J. at 8). However, given the passage of time and an issue raised by the DHS on appeal as to whether the respondent requires a waiver of inadmissibility, we find that a remand is appropriate to evaluate the respondent's eligibility to adjust her status. Accordingly, the following orders will be entered:

ORDER: The appeal is sustained.

FURTHER ORDER: The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

FOR THE BOARD

4

## Exhibit B

Denial Decision of
Adjustment of Status Application for
Armand Abaya

B

U.S. Department of Homeland Security
101 West Congress Parkway
Chicago, IL  60605



U.S. Citizenship
and Immigration
Services

SEP 0 5 2007

Armand Panlasigui Abaya
552 Greystone Lane, Unite D2
Wheeling, IL 60090

Cc:  Attorney of Record
      Christine Contreras
      P.O. Box 823
      Mundelein, IL 60060

A89400900

## NOTICE OF DECISION TO DENY APPLICATION TO REGISTER PERMANENT RESIDENT OR ADJUST STATUS

Dear Mr. Panlasigui Abaya:

On February 28, 2007, you submitted an Application to Register Permanent Residence or Adjust Status ("Form I-485") based on an approved Petition for Alien Relative (Form I-130) that classified you as the unmarried child, 21 or older, of a lawful permanent resident of the United States under Section 203(a)(2)(B) of the Immigration and Nationality Act as amended ("the Act").

Upon consideration, it is ordered that your Form I-485 be denied for the following reason(s):

Section 245(a) of the Act states in pertinent part ( emphasis added):

> *[t]he status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General . . . to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and **a immigrant visa is immediately available at the time his application is filed.***

Section 101(b)(1) of the Act states in pertinent part:

> *The term "child" means an unmarried person under twenty-one years of age.*

Page 2
A89400900

On August 6, 2002, the Child Status Protection Act ("the CSPA"), public Law 107-208, was signed into the law. The CSPA amends the Act by permitting an applicant for certain immigration benefits to retain classification as a "child" under the Act, even if he or she has reached the age of twenty-one. In particular, Section 3 of the CSPA addresses whether certain aliens will be able to adjust as a "child" of a lawful permanent resident even if they are no longer under the age of 21.

Section 3 of the CSPA states in pertinent part (emphasis added):

> *Rules for determining whether certain aliens are immediate relatives. (1)Age on petition filing date. Except as provided in paragraphs (2) and (3), for purpose of subsections (a)(2)(A) and (d), a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A) of section 101(b)(1) shall be made using (A) the age of the alien on the date on which an immigrant visa number becomes available for such alien---* **but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability;--reduced by (B) the number of** *days in the period during which the applicable petition described in paragraph (2) was pending.*

An examination of records contained in your file by the U. S. Citizenship and Immigration Services ("the USCIS") indicates a Form I-130 was filed on April 20, 1999, under Section 203(a)(2)(A) of the Act, seeking to classify you as the child of a lawful permanent resident of the United States. The instant Form I-130 was approved on August 3, 2004. At the time, when the Form I-130 was approved, your priority date, for the classification originally sought at the time of filing, was current. At the time of Form I-130 approval, your chorological age was 25 years 0 months and 24 days old. Then, your chronological age was reduced by 5 years 3 months 13 days to mitigate how long the Form I-130 was pending. Your age for immigration purposes became 19 years 9 months and 11 days old under the CSPA. Therefore, you still met the definition of a child under Section 101(b)(1) of the Act. However, the CSPA applies only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of visa availability.

According to the Section 245(a) of the Act, the status of an alien who was inspected and admitted or paroled into the United States may adjust his or her status to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment; the alien is eligible to receive an immigrant visa; the alien is admissible to the United States for permanent residence, and a immigrant visa is immediately available at the time his application is filed. In order to apply for adjustment of status under Section 245(a) of the Act, an alien is required to file a Form I-485. You were inspected and admitted into the United States and your visa was immediately available to you but you did not file a Form I-485 until February 28, 2007. Therefore, you did not seek to acquire the status of an alien lawfully admitted for permanent residence within one year of visa availability, which ended on August 2, 2005. Consequently, you are not eligible to be considered to be a child for the purpose of immigrant classification under the CSPA.

Nevertheless, you still remain qualified to adjust your status to that of a permanent resident as the unmarried son or daughter of a lawful permanent resident, F2B classification, if all of the conditions are met.

Page 3
A89400900

Section 245(a)(3) of the Act requires an immigrant visa be immediately available to the alien at the time his or her application is filed. The visa bulletin priority date for your current classification for February 28, 2007, the month and year of your Form I-485 filing, is October 1, 1996. The priority date for the petition filed on your behalf is April 20, 1999. Consequently, at the time of your Form I-485 filing, you were not able to establish that an immigrant visa was immediately available as required by Section 245 of the Act. Therefore, your application for adjustment of status to that of a permanent resident under Section 245 of the Act must be denied.

Furthermore, Section 212(a)(6)(C)(i) of the Act states in pertinent part:

> *Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this Act is inadmissible*

Section 212(a)(7)(A) states in pertinent part:

> *(A)    "Immigrants.*
> > *(i)    In general.  Except as otherwise specifically provided in this Act, any immigrant at the time of application for admission—*
> > > *(I)    who is not in possession of a valid unexpired immigrant visa, reentry permit, boder crossing identification card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 211(a), or*
> > > *(II)    whose visa has been issued without compliance with the provisions of section 203, is inadmissible."*

Section 214(b) of the Act states in pertinent part:

> *Every alien (other than a nonimmigrant described in subparagraph (L) or (V) of section 101(a)(15), and other than a nonimmigrant described in any provision of section 101(a)(15)(H)(i) except subclause (b1) of such section) shall be presumed to be an immigrant until he establishes to the satisfaction of the consular officer, at the time of application for a visa, and the immigration officers, at the time of application for admission, that he is entitled to a nonimmigrant status under section 101(a)(15).*

Section 101(a)(15) of the Act states regarding a student visa in pertinent part:

> *(F) an alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study...at an established college, university.....*

Page 4
A89400900

Accordingly, a student visa is issued to a nonimmigrant who intends to pursue academic studies and who is not an intending immigrant. Each F-1 applicant is required to establish to the satisfaction of the Consular Officer that he or she is not an intending immigrant and a failure to do results in a refusal of a visa under INA 214(b).

On December 22, 2004, after the approval of an immigrant visa petition, you were issued a student visa. On June 5, 2006, you were admitted into the United States as a nonimmigrant student. Since then, you remained in the United States and filed an application for permanent residency. It is the conclusion of the USCIS that you did not seek admission to the United States temporarily and solely for the purpose of pursuing a course of study. It is the conclusion of the USCIS that you were an intending immigrant who procured a nonimmigrant visa by willful misrepresentation. Even though you were an intending immigrant when you were admitted on June 5, 2006, you were not in possession of a proper immigrant visa allotted to your category. Therefore, you are inadmissible under Section 212(a)(6)(C)(i) and Section 212(a)(7)(A) of the Act.

Based on aforementioned grounds, your Form I-485 is hereby denied.

Title 8, Code of Federal Regulations, Part 274a.12(c)(9) allows an alien who has filed an application for adjustment of status to that of a lawful permanent resident, pursuant to Section 245 of the Act, to obtain employment authorization during the period the application is pending. However, you are no longer eligible for employment authorization as of the date of this decision because your application for permanent residence is no longer pending.

It appears that this decision leaves you without lawful immigration status and you are therefore present in the United States in violation of the law. Without a lawful immigration status you are required to depart the United States. Remaining in the United States without authorization may result in the initiation of removal proceedings against you and may affect your ability to return to the United States in the future.

Sincerely,

Robert L. Blackwood

Robert Blackwood
Field Office Director

## Exhibit C

Denial Decision of Motion to Reopen

C

**U.S. Department of Homeland Security**
101 West Congress Parkway
Chicago, Illinois 60605



**U.S. Citizenship
and Immigration
Services**

Armand Panlasigui Abaya
522 Greystone Lane, Unit D2
Wheeling, IL 60090

CC: Attorney Contreras
P.O. Box 823
Mundelien, IL 60060

A089400900

### Decision on Motion to Reopen Denial of Application for Permanent Residence

Dear Mr. Abaya:

On October 5, 2007, the Service received a motion to reopen your adjustment application. You filed your adjustment application on March 28, 2007 and it was denied on September 5, 2007. Your adjustment application was denied because you failed to qualify for CSPA.

You applied for adjustment of status based upon your mother's filing of an I-130 on April 20, 1999 seeking to classify you as a child of a permanent resident. Your adjustment application has been reviewed under the provisions of the Child Status Protection Act (CSPA). Unfortunately you do not qualify for the CSPA provisions. In order to lock in your age as being under the age of 21, you must have filed your adjustment application within one year of your visa number first becoming available.

Your visa became available August 3, 2004 when the I-130 was approved. You made some steps towards pursuing the use of CSPA provisions in 2005. You claim that you filed your application for an immigrant visa with the State Department on November 28, 2005. Your immigrant visa application was denied. You claimed that you appealed this decision and your appeal was also denied because you did not qualify for the CSPA per State Department guidelines in that you had not filed your immigrant visa application within one year of your visa becoming available.

You did not file an I-485 until February 28, 2007 when you were 28 years old. In the interim you gained admission to the United States in the non-immigrant classification F-1 on June 5, 2006. You chose to utilize a non-immigrant route vastly different from your initial pursuits and in doing so you abandoned your own opportunities to take advantage of CSPA. Simply contacting

an attorney and starting paper work that you do not follow through with timely will not hold your age in stasis indefinitely as evident by a dead line of one year being specified in the law.

In order to take advantage of the CSPA provisions, you would have had to file your adjustment application no later than August 2, 2005. You however, did not file your adjustment application until nearly a year and a half too late to take advantage of the provisions of CSPA. Your argument that you made some effort to comply initially is not sufficient.

You cited a removal proceeding date December of 2004 to defend your own actions whereby making some effort to comply and being tardy in that attempt forgiven. However, this comparison is not on point with your circumstances in that this is not a removal proceeding, you were not under the age of 21 when you did file your I-485, these proceedings are not related to an employment based application and you were more than a little late in filing. Furthermore, the immigration judge's decision is not binding on the Service.

Your late filing also appears to be your own fault rather than the fault of things out of your control. CSPA was developed to prevent you from suffering age out while the Service processed your I-130. CSPA was not designed to be an indefinite open door to this opportunity.

The Service is unable to reopen your adjustment application simply because you no longer qualify for adjustment of status as a child. Therefore, a visa number is not immediately available to you, as required by Section 245(a) of the Act. As such, your motion to reopen must be and is hereby denied.

Sincerely,

Ruth A. Dorochoff
District Director